IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CORIONSA RAMEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22-CV-04171-BCW |
| ) | |
| MICHAEL L. PAROSN, ) | |
| in his official capacity as Governor ) | |
| of Missouri, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's motion for an emergency temporary restraining order ("TRO") and preliminary injunction. (Doc. #3). The Court, being duly advised of the premises, denies said motion.

## BACKGROUND

On November 21, 2022, Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983, alleging Mo. Ann. Stat. § 546.740 violates her Fourteenth Amendment Right to Equal Protection of the laws and her First Amendment Right to Freedom of Association. (Doc. #3). Plaintiff seeks entry of a temporary restraining order ("TRO") and preliminary injunction, enjoining enforcement of § 546.740 as applied to her, and directing that she be allowed to witness her father's, Kevin Johnson Jr.'s, execution.

Defendants responded in opposition arguing there is no constitutional right under the Equal Protection Clause of the Fourteenth Amendment or the First Amendment Right to Freedom of Association to view her father's execution. (Doc. #18). Defendants argue because Plaintiff's claims fail as a matter of law, she has no likelihood of success on the merits that would support the requested relief.

1

## LEGAL STANDARD

Under Fed. R. Civ. P. 65(b), the Court has the authority to issue a TRO. When determining whether to grant a TRO the Court must balance four factors: (1) the probability that movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and (4) the public interest. Dataphase Sys. v. C L Sys., 640 F.2d 109, 111 (8th Cir. 1981); Tumey v. Mycroft Al, Inc., 27 F.4th 657, 665 (8th Cir. 2022) (the standard for issuance of a TRO or a preliminary injunction are the same). The moving party bears the burden of proving the four factors. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

## ANALYSIS

Plaintiff argues applying the four factors to the underlying action support granting the TRO and preliminary injunction. Specifically, Plaintiff emphasizes (1) she will likely succeed on the merits of her claim because § 546.740 is violative of her Fourteenth and First Amendment rights; (2) Plaintiff will suffer irreparable *de facto* harm because her Fourteenth and First Amendment rights will be violated; (3) the balance of equities favor Plaintiff because Defendants will suffer no injury whatsoever; and (4) enjoining Defendants from enforcing § 546.740 against Plaintiff is in the public interest.

### I. Plaintiff has not demonstrated a likelihood of success on the merits.

While no one factor is independently dispositive, "the probability of success factor is the most significant" of the Dataphase factors. Home Instead, Inc. v. Florence, 721 F.3d 494, 497 (8th Cir. 2013). To demonstrate a likelihood of success on the merits, the moving party must show "a fair chance of prevailing" at the conclusion of the litigation process. Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684 (8th Cir. 2003).

### a. § 546.740, as applied to Plaintiff, does not violate her Fourteenth Amendment Right to Equal Protection of the laws

The Fourteenth Amendment's Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). An equal protection claim is actionable when facts are alleged that a state actor treats a person less favorably than similarly situated people. Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000).

Age classifications are "presumptively rational" and "States may rely on age as a proxy for other qualities, abilities, or characteristics" that are relevant to the States legitimate interests. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83-84 (2000). "States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification is rationally related to a legitimate state interest." Id. at 84. "The rationality commanded by the Equal Protection Clause does not require States to match age distinctions and the legitimate interests they serve with razorlike precision." Id. Therefore, a party seeking to challenge legislation subject to rational basis review must show that the "facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Id.

Plaintiff argues § 546.740 is violative of the Equal Protection Clause because Defendants are treating Plaintiff less favorably than similarly situated adults twenty-one years of age and older who would be allowed to witness Johnson's execution. (Doc. #8). Plaintiff concedes state restrictions based on age are subject to rational basis review but argues Defendants can offer no "legitimate state purpose" to bar her from witnessing her father's execution simply because she is under twenty-one.

Defendants argue four reasons why the State has imposed an age restriction for witnessing executions. First, to prevent its young, albeit young adults, from witnessing death. See Maryland

v. Craig, 497 U.S. 836, 852 (1990). Second, to maintain the solemnity and decorum of the execution. See Ramirez v. Collier, 142 S. Ct. 1264, 1281 (2022) (Contending because of their age, teenagers or young adults may be more inclined to act out in ways that are disruptive to the proceedings); Graham v. Florida, 560 U.S. 48, 68 (2010). Third, ensuring that executions would remain open to public scrutiny by having those who witness executions be old enough to comprehend the events of the execution and be able to give an accounting of the process. Lastly, to maintain the safety and security of the execution, suggesting young adults are more likely to exhibit impulsive and unpredictable behavior that could cause a security threat during the execution. See Brown v. Plata, 563 U.S. 475, 491-92 (2011) ("Court should presume that state officials are in a better position to gauge how to best preserve public safety and balance competing correctional and law enforcement concerns."); Ramirez, 142 S. Ct. at 1281.

Plaintiff's arguments focus on her personal situation, or comparisons of different age restrictions under federal and Missouri law, but those arguments cannot state a claim for relief. The "constitutionality of state classifications on the basis of age cannot be determined on a person-by-person basis." Kimel, 528 U.S. at 85-86. Rather, a party seeking to challenge legislation subject to rational basis review must show that the "facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Id. at 84. And, Plaintiff has failed to persuasively make that argument. Put simply, "[our] Constitution permits States to draw lines on the basis of age when they have a rational basis for doing so at a class-based level, even if it 'is probably not true" that those reasons are valid in a majority of cases." Id. at 86 (citing Gregory v. Ashcroft, 501 U.S. 452, 473 (1991)). Under this applicable standard, Plaintiff's claim has not demonstrated the probability of success on the merits.

### b. § 546.740, as applied to Plaintiff, does not violate her First Amendment Right to Freedom of Association

The United States Supreme Court has found the Constitution protects "certain kinds of highly personal relationships" including immediate family relationships, but the Court has never defined the scope of those rights. Overton v. Bazzetta, 539 U.S. 126, 131–32 (2003). That said, the Court has held "freedom of association is among the rights least compatible with incarceration" and such freedoms must be curtailed in the prison context. Id. at 131.

The First Amendment right of access is qualified in certain criminal proceedings and the Eighth Circuit has not definitively determined whether the right to access extends to witnessing an execution. McDaniel v. Precythe, 897 F.3d 946, 950 (8th Cir. 2018); Zink v. Lombardi, 783 F.3d 1089, 1112 (8th Cir. 2015). However, when considering the constitutionality of regulations which impact one's ability to witness executions, the Eighth Circuit applies Turner v Safley, 482 U.S. 78 (1987). Rice v. Kempker, 374 F.3d 675, 680 (8th Cir. 2004).

Under Turner, when a prison regulation restricts a prisoner's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Simpson v. Cty. of Cape Girardeau, 879 F.3d 273, 278 (8th Cir. 2018). Four factors apply when determining if the prison regulation is valid: "(1) whether there is a valid rational connection between the prison regulation and the government interest justifying it; (2) whether there is an alternative means available to the prison inmates to exercise the right; (3) whether an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner at *de minimis* cost to valid penological interests." Id. (citing Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 982-83 (8th Cir. 2004)). The Eighth Circuit likewise applies these factors in situations where prison regulations may affect non-incarcerated individuals. Rice, 374 F.3d at 680 (applying Turner to evaluate policy impacting the

5

media); Goodwin v. Turner, 908 F.2d 1395, 1400 (8th Cir. 1990) (applying Turner to evaluate policy impacting a wife's right to procreate with her incarcerated husband).

Here, Plaintiff has not shown a violation of a cognizable right under the First Amendment. Plaintiff's argument therefore fails on this point alone. However, even assuming Plaintiff's rights are implicated by § 546.740, Plaintiff's claim would be unlikely to succeed under Turner.

First, there is a valid and rational connection between § 546.740 and the asserted governmental interest. As previously discussed, Defendants have four rational bases justifying § 546.740's age restriction including preventing teenagers from witnessing death, preserving the solemnity of the execution, ensuring the witnesses can give reliable accounts of the execution, and maintaining the safety and security of the prison. Second, Plaintiff has been afforded alternative means of exercising her First Amendment rights as she maintains a healthy relationship with her father, visits him often, and corresponds with him several times a week. (Doc. #8-1, ¶ 6-8); Simpson, 879 F.3d at 280 (Alternative means to the allegedly infringed right need not be ideal they need only be available).

As it relates to the third factor, the record is devoid of how § 546.740 impacts fellow inmates, prison resources, or prison staff. As such, this factor neither ways in favor of Plaintiff nor Defendants. Lastly, there is not an alternative at a *de minimis* cost to Plaintiff's rights because of Defendants' penological interest in preventing teenagers from witnessing death as previously discussed.

Therefore, even assuming Plaintiff has a cognizable First Amendment right impeded by § 546.740, she is unlikely to succeed on the merits of her claim because § 546.740 is reasonably related to a legitimate penological interest such that it is valid.

## II. Plaintiff does not demonstrate irreparable harm.

Plaintiff argues she has demonstrated de facto irreparable harm through the violation of her constitutional rights, as well as long-lasting emotional harm. In opposition, Defendants argue Plaintiff cannot demonstrate irreparable harm related to a cognizable legal interest that she has with respect to Johnson's execution.

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). "A threat to a constitutional right is generally presumed to constitute irreparable harm." M.B. v. Corsi, No. 4:17-CV-4102, 2018 WL 5504178, at *5 (W.D. Mo. Oct. 29, 2018) (collecting cases).

As discussed in the preceding section, Plaintiff does not demonstrate a likelihood of success on the merits that she has or will incur a violation of her constitutional rights. Consequently, Plaintiff's reliance on the de facto injury implicit in the constitutional violations alleged does not demonstrate irreparable harm.

Beyond this alleged de facto injury, Plaintiff alleges she will suffer harm that is "real, palpable, and devastating," and no remedy is available at law to compensate her for the emotional harm she will incur if she is barred from attending her father's execution. (Doc. #8). The Court does not discount these allegations of emotional harm and does not dispute they are irreparable, both in a personal sense and a legal sense. Calvillo Manriquez v. Devos, 345 F. Supp. 3d 1077, 1106 (N.D. Cal. 2018); Arizona Dream Act Coal. v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014); Heartland Acad. Cmty. Church v. Waddle, 317 F. Supp. 2d 984, 1108 n.32 (E.D. Mo. 2004), aff'd, 427 F.3d 525 (8th Cir. 2005)). However, this irreparable harm is just one aspect of the Dataphase analysis and, in the absence of an underlying constitutional violation, is not dispositive.

### III. Balance of harms and the public interest weigh in favor of Defendants.

Plaintiff argues Defendants will suffer no harm if she is permitted to witness Johnson's execution and Defendants have no interest in enforcing unconstitutional laws, therefore the balance of equities and the public interest factors weigh in her favor. Because these factors are premised on the same underlying arguments, the Courts considers them in unison.

While Plaintiff argues Defendants have no interest in enforcing unconstitutional state laws or policies, Plaintiff's argument fails because she has not successfully demonstrated § 546.740 violates her constitutional rights. Moreover, the State has a substantial interest in the sovereignty of its criminal law enforcement. Shinn v. Ramirez, 142 S. Ct. 1718, 1730 (2022) ("the power to convict and punish criminals lies at the heart of the States residuary and inviolable sovereignty."). The balance of equities is therefore in favor of Defendants. Additionally, because Plaintiff has not successfully demonstrated § 546.740's unconstitutionality, it is in the public's interest to allow states to enforce their laws and administer state prisons without court intervention. Preiser v. Rodriguez, 411 U.S. 475, 491-92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."). Accordingly, it is hereby

ORDERED Plaintiff's motion for an emergency TRO and preliminary injunction (Doc. #3) is DENIED.

IT IS SO ORDERED.

DATED: November 25, 2022 /s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT